**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| HESS INDUSTRIES, INC. and | : | Case No. 12-12036 (KJC) |
| HESS ENGINEERING, INC., | : | |
| | : | |
| | : | (Substantively Consolidated) |
| Debtors. | : | |
| | : | |
| ALFRED T. GIULIANO, CHAPTER 7 | : | |
| TRUSTEE FOR THE ESTATES OF | : | |
| HESS INDUSTRIES, INC., AND | : | |
| HESS ENGINEERING, INC., | : | |
| | : | |
| Plaintiff, | : | Adversary No. 14-      (KJC) |
| | : | |
| v. | : | |
| | : | |
| JUSTIN HILLENBRAND, | : | |
| STEPHEN PRESSER, | : | |
| JOHN STEWART, | : | |
| JAIME MCKENZIE, | : | |
| MATTHEW O'SULLIVAN, | : | |
| ROXANNE LAUER, | : | |
| ROBERT BENTLEY, | : | |
| JOHN CLEMENTS, | : | |
| DAVID ZENGER, and | : | |
| KENNETH DAVIS | : | |
| | : | |
| Defendants. | : | |
| | : | |

**COMPLAINT**

Alfred T. Giuliano (the "Trustee"), the chapter 7 trustee for the substantively

consolidated estates of Hess Industries, Inc. ("Hess Industries") and Hess Engineering, Inc.[1]

("Hess Engineering", and together with Hess Industries, collectively the "Debtors"), hereby files

---

[1] Hess Engineering, Inc. was substantively consolidated with and into the estate of Hess Industries, Inc. by Order of the Court dated November 8, 2012 [D.I. 202].

the following complaint against Justin Hillenbrand, Stephen Presser, John Stewart, Jaime McKenzie, Matthew O'Sullivan, Roxanne Lauer, Robert Bentley, David Zenger, John Clements and Kenneth Davis.

## Nature of the Action

1.      This is an action brought by the Trustee for the substantively consolidated estates of the Debtors, against certain of the Debtors' officers and directors seeking to remedy their violations of law, including breaches of fiduciary duties, waste of corporate assets, unjust enrichment and violations of the Delaware Corporations Code that occurred between July 10, 2009 and July 10, 2012 (the "Relevant Period") and that have caused substantial monetary losses to Hess Industries and other damages.

## The Parties

2.      The plaintiff is Alfred T. Giuliano, in his capacity as the duly appointed Chapter 7 Trustee of the consolidated estates of the Debtors in their Chapter 7 bankruptcy cases pending in the District of Delaware, Bankruptcy Case No. 12-12036 (KJC).   Mr. Giuliano's business address is Berlin Business Park, 140 Bradford Drive, West Berlin, NJ  08091.

3.      Defendant Justin Hillenbrand served as a director of Hess Industries and Hess Engineering during the Relevant Period and upon information and belief maintains an address at 25 Mooreland Road, Greenwich, Connecticut.

4.      Defendant Stephen Presser served as a director of Hess Industries during the Relevant Period and upon information and belief maintains an address at 755 West End Avenue, Apartment 8A, New York, New York.

5. Defendant John Stewart served as a director of Hess Industries during the Relevant Period and upon information and belief maintains an address at 142 W 57th St Fl 17, New York, NY 10019-3300.

6. Defendant Jaime McKenzie served as a director of Hess Industries during the Relevant Period and upon information and belief maintains an address at 142 W. 57th Street, Floor 17W, New York, New York.

7. Defendant Matthew O'Sullivan served as a director of Hess Industries during the Relevant Period and upon information and belief maintains an address at 905 Manley Road, Saint Charles, Illinois.

8. Defendant Roxanne Lauer served as an officer of Hess Engineering and Hess Industries during the Relevant Period and upon information and belief maintains an address at 400 Lake Drive, unit 6, New Buffalo, Michigan.

9. Defendant Robert Bentley served as an officer of Hess Engineering and Hess Industries during the Relevant Period and upon information and belief maintains an address at 472 N. Fail Road, La Porte, Indiana.

10. Defendant John Clements served as an officer of Hess Industries during the Relevant Period and upon information and belief maintains an address at 629 Misty Harbor Court, Mishawaka, Indiana.

11. Defendant David Zenger served as an officer of Hess Engineering during the Relevant Period and upon information and belief maintains an address at 1519 SouthPointe Circle N.E., Canton, Ohio.

12.     Defendant Kenneth Davis served as an officer of Hess Engineering during the Relevant Period and upon information and belief maintains an address at 11352 Wilson Rd. Nunica, MI 49448.

### Jurisdiction and Venue

13.     The Court has subject matter jurisdiction over this case as a case arising in or related to a case under 11 U.S.C. § 157 and 28 U.S.C. § 1334.  The Trustee consents to the entry of a final order by the Bankruptcy Court.

14.     This Court has jurisdiction over each Defendant named herein because each defendant is an individual who has sufficient minimum contacts with Delaware so as to render the exercise of jurisdiction by the Delaware courts permissible under traditional notions of fair play and substantial justice.

15.     Venue is proper in this Court because Defendants served as officers and/or directors of the Debtors, one of which – Hess Industries – is a Delaware corporation, a substantial portion of the transactions and wrongs complained of herein, including Defendants' primary participation in the wrongful acts detailed herein in violation of fiduciary duties owed to the Debtors (as applicable) caused damages to this Delaware corporations, and Defendants have received substantial compensation as a result of their status as officers and directors of Debtors (as applicable).

### Factual Background

16.     On July 10, 2012 (the "Petition Date"), Hess Industries filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

17.     Shortly after the Petition Date, the Office of the United States Trustee appointed the Trustee as chapter 7 trustee, which appointment remains in effect.

18.     On November 8, 2012, the Court entered an order directing the substantive consolidation of Hess Engineering, a wholly owned subsidiary of Hess Industries, with and into the estate of Hess Industries pursuant to § 105 and 704 of the Bankruptcy Code.[2]  Hess Engineering is a wholly owned subsidiary of Hess Industries.

19.     Pursuant to § 541 of the Bankruptcy Code, the Trustee succeeds to all legal or equitable interests of the Debtors in their property as of the bankruptcy filing.

20.     Hess Industries is wholly owned by Monomoy Capital Holdings II, Inc. ("Monomoy").  Hess Engineering is a wholly owned subsidiary of Hess Industries.

21.     Hess Industries was in the business of engineering, fabricating and installing custom metalforming equipment and integrated manufacturing systems primarily for applications in the automotive; heating, ventilation and air conditioning; and electrical home appliance industries.

22.     Hess Industries utilized proprietary patented technologies to develop complex and highly customized spinforming, flowforming and rollforming machines, among others to streamline its customers' assembly lines and manufacturing processes.

23.     Hess Industries conducted its primary sales, engineering and manufacturing functions from its Niles, Michigan U.S. headquarters, with an additional manufacturing, assembly and engineering facility in Bangalore India, a sales and service facility in Shanghai, China and a sales and service facility in Fraunfeld, Switzerland.

24.     Hess Industries had more than 1,200 custom machines and integrated manufacturing systems deployed in more than thirty (30) countries.

**Destruction of the Debtors' Ability to Exist As A Going Concern**

25.     The Trustee's investigation identified multiple wrongful acts by the Defendants, including a failure to perform according to their responsibilities and fiduciary duties.  Those individuals include, but may not be limited to, the following: the Debtors' directors: Justin

---

[2] All statutory references to the "Bankruptcy Code" are to Title 11 United States Code, 11 U.S.C. §§ 101, *et seq.*

Hillenbrand, Stephen Presser, John Stewart, Jaime McKenzie, Matthew O'Sullivan, Roxanne Lauer; as well as certain officers of the Debtors: Roxanne Lauer, CEO; Robert Bentley, Director of Finance; John Clements, Human Resource Director, David Zenger, and Kenneth Davis; and other applicable officers and employees.

26.     During the Relevant Period, Roxanne Lauer, an officer and director of the Debtor, working in concert with Robert Bentley, created, or caused and/or allowed the creation of, certain accounting irregularities in order to overstate the Debtors' assets and financial performance in documents provided to creditors and others.  The Defendants either knew, or should have known, of the accounting irregularities but did nothing to correct them.

27.     Specifically, the Debtors' primary lender, Comerica Bank ("Comerica"), loaned monies to Hess Industries and secured the indebtedness with the Debtors' assets, including, among other things, its accounts receivables.  Pursuant to the lending documents, the Debtors were required to report on their financial performance, which was to identify a "borrowing base" against which Hess Industries could borrow.

28.     Ms. Lauer and Mr. Bentley, working in concert with others, inflated the value of the Debtors' borrowing base by including certain ineligible accounts receivable in the base. Based on the Trustee's investigation to date, at least 35 ineligible invoices which were included in the borrowing base should have been excluded, resulting in an overstatement of the borrowing base  by at least $900,000 in September, 2010; $12 million in September 2011 and over $3.5 million in May 2012.

29.     Additionally, Ms. Lauer and Mr. Bentley, working in concert with others, caused or allowed to be caused customers to be billed in advance of contractual milestone dates in order to inflate accounts receivables.

30.     Ms. Lauer and Mr. Bentley, working in concert with others, caused or allowed to be caused the creation of false shipping documents to support the accounts receivable based on shipping milestones for which advance billings were sent to customers.

31.     Ms. Lauer and Mr. Bentley, working in concert with others, caused or allowed to be caused customers' down payments to appear in borrowing base reports in order to inflate the company's accounts receivable and, therefore, the borrowing base.

32.     Ms. Lauer and Mr. Bentley, working in concert with others, caused or allowed to be caused invoices older than 90 days to be included in the borrowing base, despite the lending agreements with Comerica which specifically required that outstanding invoices older than 90 days not be included in the borrowing base.  In particular, they caused invoices older than 90 days to falsely remain in the borrowing base reports by changing the dates of the invoices to make them appear to be less than 90 days old.

33.     Ms. Lauer and Mr. Bentley, working in concert with others, caused, or allowed to be caused, borrowing base reports to include a higher level of eligible accounts receivable than what was contained in the Debtors' accounts receivable aging reports.

34.     Ms. Lauer and Mr. Bentley, working in concert with others, caused, or allowed to be caused, from December 31, 2011 through April 29, 2012, the Debtors to artificially reduce billings in order to overstate the value of work in progress ("WIP") inventory by over $3 million.

35.     Ms. Lauer and Mr. Bentley, working in concert with others, caused, or allowed to be caused, the creation of invoices for work for which no contract had been executed.  Those invoices were then written off against billings for the same customer.  Because WIP is calculated as the difference between revenue less billings, these write-offs resulted in an overstatement of the Debtors' WIP.

36.     Defendants' actions caused the Debtors' borrowing obligations to Comerica to increase by over $6 million from approximately September 2010 to May 1, 2012.

37.     Upon information and belief, at least some, if not all of the Defendants who served on the Debtors' board of directors knew about the manipulation of the financial reports as described above.  To the extent any board member was unaware of such manipulations, such board member(s) failed to fulfill their duties to stay knowledgeable concerning the business of

the Debtors, and/or other board members and officers failed to fulfill their obligation to provide such information to any uninformed board member(s).

38.    Defendants' acts or omissions, as described above, caused the Debtors to violate covenants in their lending documents with Comerica, leading to the termination of the lending relationship with Comerica such that the Debtors had no ability to obtain lending to effectively continue its operations, which was dependent on the Comerica line of credit to maintain operations between contract inception with customers and payment from customers as contract milestone dates were reached.  Having destroyed the Debtors' relationship with its lender, Defendants destroyed the Debtors' ability to operate as a going concern.  The quick descent into chapter 7 is clear evidence of this. In less than one (1) year, the Debtors went from refinancing its secured debt obligations to shutting down operations and filing for chapter 7 bankruptcy.

39.    Further, Defendants' acts, and/or failure to act, as described above, damaged the Debtors in that they had obligations to Comerica for which, due to Defendants' mismanagement of the company the Debtors had no ability to meet.

40.    Indeed, Comerica filed a claim in the Debtors' bankruptcy case for approximately $20 million, representing indebtedness that was based in whole or in part on the incorrect financial information described above, which was provided to Comerica.

41.    The Defendants' conduct and omissions as described above constitute breaches of their fiduciary duties owed to the Debtors, their duties to the Debtors' creditors and caused the Debtors to breach contracts with third parties that relied on erroneous financial information disclosed to such third parties.

42.    The Defendants were also negligent in failing to discover and correct the accounting irregularities described above.

**Employee Theft**

43.    In addition, the Trustee's investigation to date reveals employee theft that may include forgery, alteration and/or computer theft and that may involve a transfer account.

44.    The Trustee's investigation has thus far revealed that from January 2011 through May 2012, Ms. Lauer charged over $411,000 to her Hess Industries credit card, which was issued through Comerica.

45.    The charges were for personal items from high-end, luxury retailers such as Louis Vuitton (est. $78,000), Sak's Fifth Avenue (est. $32,000), Neiman Marcus Online (est. $25,000), and Gucci E-Commerce (est. $17,000).

46.    Also included in Ms. Lauer's charges were numerous purchases at vendors that were likely related to personal expenditures rather than business related purposes (*e.g.,* grocery stores, pharmacies, animal grooming services, etc.).  The Debtors improperly paid these personal charges and allocated them in journal entries to various accounts such as Professional Fees and Other Non-EBITDA Expenses.

47.    Thus, the officers either failed to keep the board members informed in which case the officers failed to fulfill their responsibilities, or they did so inform the board and the board failed to fulfill its responsibilities including in the exercise of proper supervision of Ms. Lauer, who as an officer, serves at the board's pleasure.  Moreover, given the magnitude of the improper charges, the board members (at least those on the audit committee) should have discovered the inappropriate charges had they been fulfilling their obligation and duties to the company.

48.    The Defendants failed to exercise good faith and diligence and an appropriate standard of care in the administration of the affairs of the Debtors including, but not limited to, (i) concealing and/or misrepresenting, or allowing the concealment and/or misrepresentation of, the Debtors' business prospects and results; (ii) deceiving, or allowing the deception of, creditors regarding the management, operations, financial health and stability and future business prospects of the Debtors; and (iii) failing to properly manage and supervise the Debtors' officers, including Roxanne Lauer.

49.      Moreover, Defendants approved, and/or implemented, and/or allowed to occur various transfers of assets to Monomoy that constitute improper preferential transfers in violation of applicable laws.  Specifically, during the refinancing of Hess Industries secured debt obligations, the directors and officers permitted a significant ***unsecured loan*** to Hess from Monomoy to be completely paid off (the "Transfers"), notwithstanding the fact that Monomoy is an insider of the Debtors and the payoff gave Monomoy a preference over the Debtors' other unsecured creditors.

50.      Further, upon information and belief, many of the borrowing transactions with Comerica, as well as the diversion of company assets to pay defendant Lauer's personal expenses, occurred when the Debtors were insolvent, such that the Defendants owed fiduciary duties to the Debtors' creditors, which they failed to fulfill.

51.      The Defendants' violations of their duties to the Debtors and their creditors drove a once-profitable corporation to destruction and bankruptcy, and ultimately liquidation.

52.      By reason of their fiduciary relationships, the Defendants owed the Debtors the highest obligation of care, loyalty, good faith, oversight, supervision, reasonable inquiry, disclosure and fair dealing, as more fully set forth herein.

53.      The Defendants acted in bad faith and with deliberate indifference and disregard of their corporate responsibilities by:

      a.      failing to identify, monitor, assess, manage, control and minimize risks to Hess Industries;

      b.      failing to keep themselves and others on the Debtors' boards of directors properly informed of the Debtors' affairs, business practices, borrowing policies and practices, and the Debtors' assets and liabilities and receivables, including but not limited to the following:

            i.      failing to be kept informed about the Debtors' health, capital strength and financial viability including, but not

limited to a failure to be kept informed about the true financial condition of the Debtors;

ii.    failing to require and review relevant, accurate and necessary reports and information, thus preventing the Debtors' board of directors from knowing the true financial condition of Hess Industries and preventing the Board from making well-informed decisions; and

iii.    failing to examine all material information available to them when making decisions;

c.    failing to nominate or replace individuals on the Debtors' board of directors with directors who would direct management to manage and administer business affairs in a safe and sound manner so that the Debtors would not suffer losses and its net worth would not be impaired or destroyed;

d.    failing to hire competent management and charge them with the responsibility to manage and administer business affairs in a safe and sound manner so that the Debtors would not suffer losses and their expenses net worth would not be impaired or destroyed;

e.    failing to exercise control by directing management, or replacing members of the Debtors' board of directors with directors who would direct management, to manage and administer business affairs in a safe and sound manner so that the Debtors would not suffer losses and its net worth would not be impaired or destroyed;

f.    elevating short term profits (and, as a result, their own compensation, position and status) over the long term health and viability of the Debtors and their respective shareholder and creditors;

g.  failing to ensure that the Debtors' board of directors and committees had the required number of independent directors and necessary qualifications and expertise;

h.  providing improper and unreasonably generous compensation to the Debtors' directors and officers whose actions adversely affected the Debtors;

i.  authorizing Debtors to pay dividends or otherwise upstream payments to its shareholder when it was reckless and inappropriate for Debtors to pay such dividends or otherwise upstream payments given the Debtors' financial condition;

j.  directing, authorizing and or allowing the Debtors to make false and misleading statements and/or omissions of material fact to its shareholder and/or creditors, when they knew or should have known that such statements and omissions were false and/or misleading; and

k.  engaging in self-dealing, conflicts of interest and other breaches of loyalty.

54.    The obligation to understand, control and minimize the risks in the Debtors' financial practices, and to take steps to reduce such risks and establish prudent business practices, fell directly on Defendants, in their capacity as officers and directors of the Debtors and on the Defendants who were members of the Debtors' Audit Committees.

55.    Defendants caused the Debtors' to make false and misleading statements to creditors. Defendants misrepresented the strength of the Debtors' financial position because they, at best, did not know and did not adequately inform themselves as to whether the Debtors had a sufficient borrowing base or, at worst, affirmatively knew that Debtors had an insufficient borrowing base.

## FIRST CLAIM FOR RELIEF
## BREACH OF FIDUCIARY DUTY

56.     Plaintiff incorporates by reference and realleges each and every allegation contained in this Complaint, as though fully set forth herein.

57.     The Defendants owed the Debtors fiduciary obligations.  By reason of their fiduciary relationships, the Defendants owed the Debtors the highest obligation of care, loyalty, good faith, oversight, supervision, reasonable inquiry, disclosure and fair dealing, as more fully set forth herein.

58.     The Defendants, and each of them, violated and breached their fiduciary duties of care, loyalty, good faith, oversight, supervision, reasonable inquiry, disclosure and fair dealing owed to the Debtors, as set more fully above.

59.     By way of example, the Defendants acted in bad faith and with deliberate indifference and disregard of their corporate responsibilities by:

    a.     failing to identify, monitor, assess, manage, control and minimize risks to the Debtors;

    b.     failing to keep themselves and others on the Debtors' board of directors properly informed of the Debtors' affairs, business practices, borrowing practices and financial condition;

    c.     failing to give relevant and necessary reports and information to the Debtors' management, thus deceiving the Debtors about the true condition of the Debtors and preventing the Debtors from making well-informed decisions;

    d.     failing to examine all material information available when making decisions;

    e.     failing to nominate or replace individuals on the board of directors with directors who would direct management to manage and administer

business affairs in a safe and sound manner so that the Debtors would not suffer losses and its net worth would not be impaired or destroyed;

f.      failing to hire competent management and charge them with the responsibility to manage and administer business affairs in a safe and sound manner so that the Debtors would not suffer losses and its net worth would not be impaired or destroyed;

g.      failing to exercise control by directing management, or replacing members of the board of directors with directors who would direct management, to manage and administer business affairs in a safe and sound manner so that the Debtors would not suffer losses and its net worth would not be impaired or destroyed;

h.      Elevating short term profits (and, as a result, their own compensation, position and status) over the long term health and viability of the Debtors, and their respective shareholder and creditor;

i.      failing to ensure that the Debtors' board of directors and committees had the required number of independent directors and/or necessary qualifications and expertise;

j.      providing improper and unreasonably generous compensation to the Debtors' directors and officers whose actions adversely affected the Debtors;

k.      authorizing Debtors to pay dividends and/or upstream money to Monomoy, including the Transfers, when it was reckless and inappropriate to pay such dividends and/or upstream such funds given the Debtors' financial condition;

l.      directing, authorizing and/or allowing through their acts and omissions the Debtors to make false and misleading statements and/or omissions of

material fact to creditors and other third parties, with the knowledge that
such statements and omissions were false and/or misleading;

m.      failing to properly manage the affairs of the Debtors choosing instead to
rely on borrowing based on manipulated financial reports;

n.      transferring capital from the Debtors to Monomoy in violation of their
duty to the Debtors and their respective creditors;

o.      engaging in self-dealing, conflicts of interest and other breaches of
loyalty;

p.      failing to rely upon appropriate consultants and professionals in taking the
foregoing actions; and

q.      subjecting the Debtors to litigation and thereby caused or permitted the
Debtors to incur and pay attorneys' fees and other costs.

60.     Each of the Defendants had actual or constructive knowledge that Debtors'
business prospects and financial results were materially false.  These actions could not have been
a good faith exercise of prudent business judgment to protect and promote the Debtors' interests.

61.     As a direct and proximate result of the Defendants' failure to perform their
fiduciary obligations, the Debtors have sustained significant damages.  As a result of the
misconduct alleged herein, the Defendants are liable to the Trustee.

## SECOND CAUSE OF ACTION
## WASTE OF CORPORATE ASSETS

62.     Plaintiff incorporates by reference and realleges each and every allegation
contained in this Complaint, as though fully set forth herein.

63.     During the Relevant Period, Debtors – with the Defendants' approval and
authorization – upstreamed capital to Monomoy, by and through the Transfers, thereby wasting
valuable assets to the detriment of the Debtors' creditors.

64.     Defendants approved and authorized such upsteam payments when it was abundantly clear that the Debtors would not survive as going concerns.

65.     The transfers of capital were an exchange of assets for no consideration and thereby served no corporate purpose.  No ordinary, reasonable person of sound business judgment would have transferred capital from Debtors to Monomoy knowing what the Defendants knew or should have known, as more fully alleged above.

66.     As a result of the misconduct described above, the Defendants wasted corporate assets by failing to properly consider the interests of the Debtors and their respective creditors by failing to conduct proper supervision.

67.     As a result of the waste of corporate assets, the Defendants are liable for the damages they caused.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

68.     Plaintiff incorporates by reference and realleges each and every allegation contained in this Complaint, as though fully set forth herein.

69.     By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense of and to the detriment of the Debtors by virtue of, for example, compensation paid and benefits given to them.

70.     The Trustee seeks an order of this Court disgorging profits, salaries, bonuses, payments, benefits and other compensation obtained by these Defendants, and each of them, from their wrongful conduct and fiduciary breaches.

## FORTH CAUSE OF ACTION
## BREACH OF DUTY TO CREDITORS

71.     Plaintiff incorporates by reference and realleges each and every allegation contained in this Complaint, as though fully set forth herein.

72.     The Defendants owed fiduciary obligations to the Debtors.  During all times that the Debtors were insolvent or in the vicinity of insolvency, the Defendants owed fiduciary duties of good faith, loyalty and care to all of the Debtors' creditors in addition to those duties owed to the Debtors and its shareholder.

73.     The Defendants breached their fiduciary duties to the Debtors' respective creditors as more fully described above by failing to exercise the care that an ordinary person would use under similar circumstances when the Defendants caused funds to be upstreamed to Monomoy, by and through the Transfers, for no consideration.

74.     At the time the Transfers were made, the Debtors had a deficiency of assets below liabilities with no reasonable prospect that the business could be successfully continued.

75.     At the time the Transfers were made, the Debtors had an inability to meet maturing obligations as they fell due in the ordinary course of business.

76.     As a result of the Transfers, the economic value of the Debtors was harmed to the detriment of the creditors who now have claims against the bankruptcy esstate.

77.     Accordingly, the Debtors' creditors suffered significant damage because of such conduct, which was a breach of the Defendants' duties to such creditors.

78.     The Trustee, on behalf of the Debtors' estate and its creditors, is entitled to make this claim against the Defendants under § 544 of the Bankruptcy Code and other applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff demands judgment as follows:

A.     against all of the Defendants and in favor of the Trustee for the amount of damages sustained by the Debtors as a result of the Defendants' breaches of fiduciary duties, waste of corporate assets, unjust enrichment and violations of the Corporations Code;

B.     awarding to the Trustee restitution from the Defendants, and each of them, and ordering disgorgement of profits, benefits and other compensation obtained by the Defendants;

C.    awarding to the Trustee the costs and disbursements of the action, including

reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

D.    granting such other and further relief as deemed just and proper.

Respectfully submitted,

F**OX ROTHSCHILD LLP**

By:_____*/s/ Seth Niederman*_____
    Seth Niederman, Esquire
    Delaware Bar No. 4588
    919 N. Market Street, Suite 1300
    Wilmington, DE  19801-3046
    (302) 654-7444/Fax (302) 656-8920
    sniederman@foxrothschild.com

          -and-

    Michael G. Menkowitz, Esquire
    William H. Stassen, Esquire
    Samuel H. Israel, Esquire
    2000 Market Street, 20th Floor
    Philadelphia, PA 19103-3222
    (215) 299-2000/Fax (215) 299-2150
    mmenkowitz@foxrothschild.com
    wstassen@foxrothschild.com
    sisrael@foxrothschild.com

    Counsel for Alfred T. Giuliano, Chapter 7 Trustee
    for the estate of Hess Industries, Inc. and
    Hess Engineering, Inc.

Dated: July 3, 2014